Honorable Marc Barreca

FILED
2010 OCT 21 AM 10: 51
M.L. HATCHER, CLK
U.S. BANKRUPTCY COURT
W.D. OF WA AT SEATTLE
BY_____DEP CLK

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| ELECTRIC VEHICLE COMPONENTS, LLC d/b/a/ EV Components, <br><br>Debtor(s), | Chapter 7 <br> Bankruptcy No 10-18150 |
| ELECTRIC VEHICLE COMPONENTS, INC., d/b/a/ EV Components, <br><br>Debtor(s) | Chapter 7 <br> Bankruptcy No 10-18151 |

**MOTION IN OPPOSITION TO TRUSTEES MOTION TO DISMISS CHAPTER 7 BANKRUPTCY**

**COMES NOW**, James Morrison, of Debtor Electric Vehicle Components, LLC, CEO of Debtor Electric Vehicle Components, Inc., and secured creditor of both entities and responds and answers Trustee's motion to dismiss:

1. Admitted.

2. Denied. Trustee, in error, refers to "Michael" Morrison. "Michael" Morrison, whoever he is, is not a party to these proceedings. The correct respondent/creditor is James Morrison.

3. Admitted.

4. Denied. James Morrison converted EV Components, LLC to EV Components, Inc. in April, 2010, on advice of counsel as an easier business form for new investment. In March and April, 2010, James Morrison was actively meeting with possible new investors.

Morrison's partner in EV Components, LLC, David Kois, began to have personal problems in December, 2009. His wife suffered from some illness and lost her job as a nurse. Her income was their only regular income. EV Components made good profits April through October, 2009 and paid out the proper percentages of profit to the partners, Morrison and Kois, and to Otmar, a business associate who was manufacturing zilla controllers under EV Components, LLC for a percentage of those profits. Morrison kept control of the checkbook because all of the assets put into the company were his. Kois contributed his knowledge, his contacts, and his daily work. Due to seasonal changes and an increase in employee costs, the company had fewer profits in November, December, 2009 and January, 2010 and so smaller or no profits were paid out. Kois began asking the bookkeeper for access to the checkbook. He intercepted the mail in February and grabbed some customer checks. Kois and Morrison began to have disputes. Morrison's position was that profits were only paid when earned. Kois needed money due to his personal situation. Morrison then asked Kois to convert from a partner to an employee and he would be paid a salary. Kois initially agreed to this. But, there continued to be problems over the money. Morrison wanted Kois to continue in the business and offered him a salary in lieu of continuation as a partner. However, he did not foresee what Kois would ultimately do to the business.

5. Denied. James Morrison and his attorney created EV Components, Inc. on April 10, 2010.

6. Denied. James Morrison loaned $150,000 to EV Components, LLC in April, May and June, 2009. These loans were documented, interest was paid, and a UCC-1 was created by Morrison's attorney. Later, an additional $54,300 was loaned to the company in January, February, and April, 2010. These loans were also documented, and another UCC-1 was created and filed.

7. Denied. Morrison submitted bank statements, loan documents, UCC-1 documentation to prove his secured creditor status. In initial discussions with the Trustee, he acknowledged Morrison's secured creditor status. He also acknowledged that Morrison's documented secured claims of $204,300 would probably exceed the value of remaining inventory and equipment after the thefts by former partner David Kois, leaving nothing for unsecured creditors. Trustee lamented that he would not get paid if nothing was available for the unsecured creditors because he was to get a percentage of that recovery. He then attempted to negotiate with Morrison and his attorney to accept a lower amount for his secured claims. The Trustee offered Morrison $54,300 as secured claims, leaving the rest for unsecured creditors.. Morrison and his attorney could not understand why if he was secured for the later loans, why was he not secured for the earlier ones. The Trustee challenged the timing of the UCC-1 filing. Morrison's attorney asked the Trustee for any rule or case law that related to the timing of a UCC-1 filing. The Trustee refused to provide case law or rule. Morrison and his attorney could not understand why

3

the Trustee's fee was a consideration in the determination of Morrison's creditor status.[1] Without warning or other discussion, the Trustee filed the adversary proceeding and made allegations unsubstantiated by the documents he had reviewed. Morrison filed an answer to the adversary proceeding in a timely manner.

8. Admitted. The assets of EV Components, LLC were transferred in total to EV Components, Inc. in a conversion completed by Morrison's attorney for the reasons outlined in Paragraphs 4 and 5 above.

9. Denied in part. Note: Michael Morrison is assumed to mean James Morrison. Morrison filed civil suit against former Partner David Kois and business associate Otmar after Kois stole inventory and equipment from the company's premises the weekend of April 24 and 25, 2010... Kois deposition was taken in July, 2010, where he admitted taking the assets, manufacturing equipment, and inventory. He also admitted that orders to customers were completed through April 23, 2010, and that his actions on the weekend of April 24 and 25th, 2010, prevented further deliveries to customers. Trustee is aware of this deposition, yet makes adverse statements in pleadings and to the Court. The deposition is available if the court would like to read it.

10. Denied. This is an incomplete statement. **Trustee never requested that assets be turned over to him.** He was aware that the inventory and assets were in storage and that the fees were two months in arrears and that the

---

[1] Morrison's step-father is William Wells Beckett, Attorney (Retired) and former Chairman of the Attorney Grievance Committee for the State of Maryland for 10 years. Morrison discussed the matter in depth with him. Beckett was very concerned that the Trustee had made his fee a consideration in the negotiation. It is believed that Morrison's attorney made this known to the Trustee.

landlord was in control of them. In discussions, he repeatedly declined to have the estate pay the storage fees. Negotiations were underway and the Trustee initially made an offer to allow Morrison to sell the inventory to gain cash for the storage fees. Trustee bemoaned the fact that since it appeared to be a no asset recovery for the unsecured creditors, he would make no money on this case. He attempted to negotiate a split and allow Morrison only the later loans as secured, $54,300, and the remaining assets would go to the unsecured creditors. When asked for a legal basis for a secured creditor to agree to such a split, which the Trustee did not provide, he quickly and surprisingly filed the adversary proceeding with the allegation that Morrison was refusing to turn over assets.

11. Denied. **Trustee never demanded the assets, being aware that they were in storage and the landlord was in control of them for arrears of rent.** In the initial negotiations Trustee made an offer that Morrison could manage the sale of the assets if he agreed to the decreased amount as a secured creditor and gave up some of his secured status so that there would be recovery for the unsecured creditors.

12. Denied. The Trustee was discussing and negotiating with full knowledge of the dates and he had all of the documents. He "decided" to allege preference in order to file his adversary proceeding. There is an email among the attorneys confirming that the Trustee offered Morrison a secured creditor status in the amount of $54,300 as a split. When asked for his legal basis for

5

splitting the preference, he then immediately filed the adversary proceeding. Morrison and his attorney were very surprised.

13. Denied. Morrison did not intend to deny access to the auctioneer. He and the landlord were denying access to David Kois who had admitted taking company assets and inventory from the premises, constituting theft.

14. Denied. Morrison did not have possession and control of the assets and inventory. They were in storage and the landlord had control for arrears under Washington state law regarding storage facilities. The unsecured creditors in the state court proceeding continued to litigate and the state court judge continued to issue orders in violation of the stay. The plaintiffs in that case are the unsecured creditors in the bankruptcy. They are demanding the same assets that the bankruptcy court now controls. All actions in that court should be stayed pending the outcome of the bankruptcy. If the bankruptcy court determines that Morrison is a secured creditor for any remaining assets (now depreciating rapidly, worth $20,000 at auction per the auctioneer) then the state court action is res judicata. The deposition of David Kois was taken in July, 2010, wherein he admitted he took assets and inventory from the company's premises. He also admitted that had he not taken the manufacturing equipment and inventory, the zilla controller orders and some of the battery orders could have been filled and $70,000 of the orders of the unsecured creditors would have been completed and delivered. It was this theft and the inability of the company to manufacture the controllers and make those deliveries that forced it into bankruptcy.

6

15. Denied. David Kois was denied access to the facility and the company premises by the landlord who was aware that he had stolen assets and inventory.

16. Admitted.

17. Trustee's statement that Morrison's claim would likely be subordinated is not substantiated or logical in view of Trustee's other allegations and sworn statements of Kois and the documents. **Trustee appears to admit that Morrison has a "new value" defense for his preference.** Trustee admits that he was asked to pay storage fees out of the estate and declined. Morrison has documents and a year long history of treating the loans appropriately and paying interest. Trustee has the allegations of the unsecured creditors and statements by David Kois who has admitted removing assets and inventory from the company. The Trustee has taken no action against Kois for his actions that led to the company's demise or to recover those assets from Kois for the estate.

18. Trustee states that the unsecured creditors want the bankruptcy petition dismissed so that they can continue their state court action against the company and Morrison, the secured creditor. This action seems to be their acknowledgement that Morrison is the secured creditor and they will receive little or nothing in the bankruptcy; thus, they want it dismissed.

19. Under bankruptcy rules, the unsecured creditors are behind the secured creditors and if assets are not sufficient to cover the secured creditors, then the unsecured creditors are not entitled to recover. Their attempt to get the

7

bankruptcy dismissed is an attempt to circumvent this rule. The Trustee shows concern for the unsecured creditors and none for the secured creditor whose cash financed the inventory orders from China; containers full of lithium batteries so that a substantial discount could be obtained due to the volume of the order.

20. Denied. **Trustee appears to want the Court to be concerned that he is not getting paid enough for this case.** It appears that if he cannot get a pool of unsecured creditors and find some recovery for them in order to get his percentage, he no longer wants to continue this case so he wants it dismissed. Trustee makes reference to a "bribe". He offers no explanation and no proof that a "bribe" was offered. No bribe in any form or any fashion was offered to the Trustee. What was being asked for and what was offered as a "bribe"? This is an outrageous and libelous statement by the Trustee.[2]

The events leading up to the bankruptcy; the removal of manufacturing equipment for zilla controllers and inventory by David Kois (as admitted to in his sworn testimony) was not predicted by Morrison or under his control. (Or, he would have changed the locks) Kois admitted that his actions of the weekend of April 24 and 25, 2010, prevented the company from continuing to manufacture the zilla controllers and to deliver product to customers after April 23, 2010. He further admitted under oath that product was being delivered normally up to April 23, 2010. Morrison filed civil suit against Kois and Otmar for the theft. Then Kois stirred up angry customers who were not

---

[2] If the Trustee had not earned a Bar complaint for his other actions, he has certainly done so with this one. He will explain in detail and prove his allegation of a "bribe" or he will issue an apology to Mr. Morrison and the Court for violation of Rule 9011.

8

receiving their orders, telling them that Morrison was responsible. They then filed suit against Morrison in June, 2010. Morrison, facing angry customers, lawsuits, and having not enough assets or inventory, and lacking the ability to manufacture and deliver the zilla controller orders (since Kois had taken the manufacturing equipment), had no recourse except to put the company into bankruptcy, at great loss to himself.

Had Kois not taken the inventory, assets, and manufacturing equipment, the company would still be operating today. Trustee's allegations are false.

21. **There is no basis for dismissal of this Chapter 7. The secured creditor, Morrison will recover some small portion of his $204,300 loans to the company. Even if the court accepts the Trustee's original offer of $54,300 secured interest to Morrison and also accepts the auctioneer's valuation at auction of $20,000. The $20,000 in value, i.e. the inventory and assets should be turned over to Morrison as the secured creditor for a greater amount, as partial recovery for his security interest as a resolution of this bankruptcy.**

22. The Trustee wants to be rid of this case. His only mechanism is to allege "bad faith" and he does so, without basis, without proof, and without any documentation to that effect. The Trustee has only recently decided that Morrison's interest was voidable. He initially wanted to negotiate Morrison's security down from $204,300 to $54,300. Morrison did show the Trustee's representative the inventory and assets. He refused to show it to Kois because Kois had already admitted stealing equipment and inventory, the landlord did

9

not want Kois on the premises, and because the state court's order was in violation of the stay.

23. Morrison agrees that the cost of litigation is too high and that the inventory and assets have been allowed to deteriorate and decline in value by these delays. However, the Trustee totally ignores Morrison's security interest, the large amount of cash he loaned to the company with good documentation and UCC-1 filings securing his interest, making him a secured creditor. The Trustee acknowledged Morrison's security interest at the outset. When the Trustee injected consideration of his fees into the negotiation and Morrison consulted his step-father, who questioned those ethics, the Trustee (possibly knowing he had stepped over the line) immediately filed an adversary proceeding and now desperately wants out of this case. If the case is dismissed as the Trustee requests, Morrison will be damaged by not getting the relief he has requested via the bankruptcy court in addition to the damage he has already received by the loss of his company. In addition, the litigants in the state court will use the dismissal with the Trustee's allegation of bad faith as evidence that their claims should pierce the corporate veil. Morrison will be severely damaged by a dismissal.

WHERETOFORE:

Debtors and James Morrison respectfully asks the Court to:

1. Deny Trustee's Motion to dismiss the Chapter 7 bankruptcy.

2. Allow Trustee McCarty to withdraw and appoint another trustee.

3. In the alternative, accept McCarty's original offer of $54,300 as Morrison's secured creditor status and the auctioneer's estimate of $20,000 as the value of assets and inventory and grant the bankruptcy discharge in this case with Morrison as the secured creditor and the case a no asset case for the unsecured creditors; allowing Morrison to take the assets and inventory as his security under the UCC-1 form.

Respectfully submitted,
Dated this 21st day of October, 2010.


*James Morrison*
James Morrison
Secured Creditor, EV Components.

CERTIFICATE OF SERVICE: On 21st October, 2010, a copy of this was delivered by US Mail or hand delivery to the following Michael McCarty, Trustee..

11